

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
vs. ) No. SD38099
)
LANCE LECHNER, ) **Filed: February 24, 2025**
)
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF STONE COUNTY

The Honorable David A. Cole, Judge

**<u>AFFIRMED</u>**

Lance Lechner ("Lechner") appeals the judgment of the Circuit Court of Stone County, Missouri ("trial court"), convicting him of child molestation in the first degree following a jury trial. *See* section 566.067.[1] The trial court sentenced him to 20 years' imprisonment to be served consecutively to a sentence imposed on Lechner in another case. Lechner raises seven points on appeal. In Points I and II, Lechner contends the trial court abused its discretion in allowing the State to file its Third Amended Felony

---

[1] Unless otherwise indicated, all statutory references are to RSMo 2016, including, as applicable, statutory changes effective January 1, 2017. All references to rules are to Missouri Court Rules (2024).

Information on the day of trial (Point I) and not granting Lechner's motion for continuance (Point II) because the Third Amended Felony Information added new allegations to the charge and Lechner was not allowed sufficient time to prepare a defense. Lechner claims in Points III, IV, and V the trial court abused its discretion "in not granting the defense's request for a mistrial" and failing to strike certain venirepeople, specifically Venirepeople Nos. 16, 21, and 35 when they indicated potential bias due to Lechner's prior convictions for sexually touching a minor and they were not sufficiently rehabilitated. Lechner claims in Point VI the trial court erred in accepting the jury's guilty verdict on Count I because "an aggravated sexual offense" is an essential element of the crime of first-degree child molestation and the verdict director, Instruction No. 5, omitted the mandatory modification that would allow the jury to find Lechner committed "an aggravated sexual offense" to return a guilty verdict on Count I. Lechner claims in his last point, Point VII, there was insufficient evidence from which a rational juror could find beyond a reasonable doubt the aggravating element of first-degree child molestation, that Lechner "had previously been found guilty" of a Chapter 566 offense, where the timeframe for the charged offense included the same date Lechner pled guilty to third-degree child molestation.

Finding no merit to Lechner's claims, we deny all seven points on appeal and affirm the trial court's judgment.

## Factual Background and Procedural History

The victim in this case ("Victim"), a twelve-year-old female, was friends with Lechner's niece ("Friend") and met Lechner through Friend. Victim and Friend visited Lechner's trailer home on multiple occasions, and sometimes stayed the night. Prior to

2

the alleged touching, Lechner had shown Victim and Friend movies Victim considered pornography, and a game where animations did sexual things. On the date of the incident, Victim was alone in Lechner's bedroom playing on the computer. Lechner came into the room and sat behind her, after which Victim moved onto his lap. Lechner slid his hand under Victim's shirt and rested it on top of Victim's breast, over her bra. Lechner asked if Victim wanted him to stop. Victim removed Lechner's hand and went outside, where she told Friend she wanted to return home. Victim did not notify anyone about what had happened until she told her grandmother about two or three weeks later on March 25, 2022. Victim's grandmother reported the incident to law enforcement that same day.

After grandmother reported the incident to law enforcement, Lechner called grandmother. Lechner told grandmother he was sorry and that he did not know what was wrong with him. He informed grandmother he was getting counseling and was willing to pay for Victim's counseling.

An arrest warrant was issued for Lechner on April 21, 2022. Lechner traveled to Lincoln, Nebraska, on April 23, 2022, to stay with his niece, where he alluded to being in trouble with the law.[2] Lechner's niece had a friend contact law enforcement after researching warrants in Missouri. Lechner was arrested in Lincoln on April 25, 2022.

*Charging Documents and Prior Conviction*

Lechner was charged by Felony Information on June 30, 2022, with the class A felony of child molestation in the first degree. The information alleged that,

---

[2] Lechner informed his niece that he was "hotter than a two-dollar pistol," that "there [were] some people that want to put some jewelry on" him, and he removed the license plates from his car.

> [O]n or about on or about [sic] March 17, 2022, in the County of Stone, State of Missouri, [Lechner] knowingly subjected [Victim] who was less than 14 years old to sexual contact by touching her breast and [Lechner] has previously been found guilty of an offense under RSMo Chapter 566, RSMo, in that on or about January 19, 2022, [Lechner] pled guilty to the crime of Child Molestation in the Third Degree in the Circuit Court of Stone County, Missouri, case number 19SN-CR00736-01.

The case was originally set for a jury trial on November 28, 2022. A pretrial conference was held on November 18, 2022, where the State filed an Amended Felony Information without Lechner's objection. The Amended Felony Information alleged that,

> [B]etween November 1, 2021 and March 25, 2022, in the County of Stone, State of Missouri, [Lechner] knowingly subjected [Victim] who was less than 14 years old to sexual contact by touching her breast and [Lechner] has previously been found guilty of an offense under RSMo Chapter 566, RSMo, in that on or about January 19, 2022, [Lechner] pled guilty to the crime of Child Molestation in the Third Degree in the Circuit Court of Stone County, Missouri, case number 19SN-CR00736-01[.]

Also at the pretrial hearing, the trial court granted the State's Motion to Endorse Witnesses and Lechner's Motion for a Continuance.

On the first day of trial, April 12, 2023, the State filed a Second Amended Felony Information, which the trial court never ruled upon, and a Third Amended Felony Information, over Lechner's objection, charging Lechner with two counts. Count I was the original charge of the class A felony of child molestation in the first degree. It alleged that,

> [O]n or between January 18, 2022 and March 25, 2022, in the County of Stone, State of Missouri, [Lechner], for the purpose of arousing or gratifying the sexual desire of [Lechner], subjected [Victim], who was then less than fourteen years old to sexual contact by touching her breast through her clothing, and [Lechner] has previously been found guilty of an offense under RSMo Chapter 566, RSMo, in that on or about January 18, 2022, [Lechner] pled guilty to the crime of Child Molestation in the Third Degree in the Circuit Court of Stone County, Missouri, case number 19SN-CR00736-01.

4

In Count II, Lechner was charged, in the alternative, with the class C felony of child molestation in the third degree. It alleged,

> [O]n or between November 1, 2021 and January 17, 2022, in the County of Stone, State of Missouri, [Lechner], for the purpose of arousing or gratifying the sexual desire of [Lechner], subjected [Victim], who was then less than fourteen years of age, to sexual contact by touching her breast through the clothing.

The State informed the trial court of the reasoning for the alternative count stating,

> We had some discussions off the record because of the range of dates and how that could affect what the jury would find depending on what they would believe on the evidence. I think we need to account for both sides of [Lechner's] prior plea. . . . [I]t also adds to [Lechner's] prior offense that takes sentencing away from the jury.

The Third Amended Felony Information also alleged, as to both counts, that Lechner was a prior offender based on his January 18, 2022 guilty plea to child molestation in the third degree, which was referenced in Count I.

Defense counsel objected to the State filing the Third Amended Felony Information stating he had prepared a Motion to Dismiss or a Motion for Judgment of Acquittal that he was going to file at the close of the State's case because the original charge in the case omitted the required language, that "[Lechner] acted for the purpose of arousing or gratifying the sexual desire of [Lechner]," which was a required element of the charge and required to be in the verdict director. The trial court granted the State's motion stating,

> I don't believe that there has been any surprise on behalf of [Lechner]. It may not – All it appears to me is that he corrected the mistake that you had – or the omission that you had previously identified. I don't see that there is any prejudice to the defense by proceeding.

Lechner then pled not guilty to the charges.

At that time, the State requested the trial court take judicial notice of Exhibit No. 46, a certified copy of the charge, the sentence and Judgment, docket entries, and Lechner's date of birth in case number 19SN-CR00736-01. The State acknowledged that it had to prove Lechner is a prior offender as an element of the charge and for sentencing purposes. Lechner did not object to the trial court taking judicial notice of its own files, and the trial court admitted Exhibit No. 46, took judicial notice of its file contained in case number 19SN-CR00736-01, and found that Lechner is a prior offender.

*Voir Dire*

During voir dire, defense counsel informed the venire panel it would hear evidence during trial that Lechner had previously been found guilty of touching a different child on a different date, and that the evidence would be admitted as propensity evidence. Defense counsel specifically stated:

> I anticipate that there is going to be some evidence in this case that [Lechner] has previously been found guilty of touching a different child on a different date, and that evidence will come in on the question of propensity. And propensity means the more likely to have committed this type of crime because he had done something similar in the past.
> Is there anyone here who would not be able to – Number 60.

Venireperson No. 60 responded and the following exchange occurred:

> BY VENIREPERSON 60: Right, so your question was, if he had allegations previously would I be able to overlook that in this case?
>
> [DEFENSE COUNSEL]: Would you be able to treat the facts of this case –.
>
> BY VENIREPERSON 60: No.
>
> [DEFENSE COUNSEL]: So, the fact that he was previously convicted would make it impossible for you to give him a fair case?
>
> BY VENIREPERSON 60: Right. I'm already like this is not the right case for me.

6

[DEFENSE COUNSEL]: Okay. Is there anyone else who feels that way?

Several venirepeople raised their hands. The State then objected, and the following exchange occurred between the State, defense counsel, and the trial court:

[STATE]: I'm going to object to the form of the question just real slightly because I think it might need to be phrased a little different. If they could not – if they would automatically find him guilty just because of the prior, then that means they can't follow the law.

Again, if they are saying it is hard for me or I don't like that or that makes me feel bad. I don't think that gets to the heart of the matter. I think the heart of the matter is, they would automatically find him guilty or they could never consider finding him not guilty knowing he had a prior offense.

[DEFENSE COUNSEL]: I can try to rephrase that.

BY THE COURT: Well, I think that, you know, that is just a fact that they need to consider that there is still – I mean, he still has to prove his case. I don't think they are going to find him guilty of this one just because he was guilty of that one. But I would hope that we could rehabilitate this group so we can keep this jury today, [defense counsel]. Because I think you know where you are headed, and I don't think we want that.

[STATE]: I do think that if they say, no, I wouldn't consider even after hearing all the evidence, then I think they have to go because they can't follow the law.

BY THE COURT: I think that is the question we get into whether they are capable of following the law.

[DEFENSE COUNSEL]: I'll rephrase.

Defense counsel rephrased his question to the panel, stating:

I'm going to step back a little bit. The [trial] [c]ourt is going to allow you to consider [Lechner's] prior convictions on whether he had a propensity to commit this type of crime. But the issue in this case would be whether or not he actually did the touching that is alleged in this case.

So, my question is, would – is there anyone here who could not make a determination of whether [Lechner] is guilty of this charge touching the breast for two seconds and leave room for the possibility that you would find him not guilty even though he has the two prior convictions, two prior touching's [sic]…[made] in a sexual manner[?]

7

. . . .

Okay, so we are not trying to get everybody off the jury. We are trying to make sure that the panel just wouldn't automatically say, well, he did it before, so, he must have done it this time. And stop your analysis and stop listening to the evidence.

The Judge is going to instruct you on that, that you can consider the propensity, but it was a separate charge and [Lechner] should not be found guilty solely because of his prior convictions.

So, with that understanding, is there anyone now that I have told you that there is going to be evidence of his prior incidence [sic] you would just automatically say, well, there goes the presumption of innocence I would find him guilty right now based on that.

After this question was asked, several venirepeople raised their hands, and defense counsel questioned some of them individually. Counsel had the following exchange with Venireperson No. 35:

[DEFENSE COUNSEL]: Number 35, do you feel the same way [referring to prior answers from venirepersons who felt it would be difficult or impossible to give Lechner a fair trial]?

BY VENIREPERSON 35: Yeah, I have already sat on a jury on a case just like this, and I have pretty well got my mind made up.

[DEFENSE COUNSEL]: Okay. Your mind being made up being you could not give a fair trial to either the State or [Lechner]?

BY VENIREPERSON 35: Right.

After additional questioning of the venire panel, the parties made their arguments to the trial court on strikes for cause. The State moved that several venirepeople who stated they did not think they could be fair or could not be fair be stricken for cause, to which defense counsel and the trial court agreed. Defense counsel then stated:

[DEFENSE COUNSEL]: I have a number that indicated that they were going to have trouble with propensity.

. . . .

8

BY THE COURT:  On the propensity issues I have got a various level of responses. I have got two that said impossible, and that was 60 and 63, who have already been stricken.

I have got two that said strongly influenced. One that said very difficult. And the rest said would make it hard, and a lot said me too.

So, I guess the question comes down to does the response would make it hard and I agree enough to strike for cause? Do you have specifics or are you talking about the entire list?

Defense counsel responded, "I would suggest that all the ones that said that they would have difficulty just because of the priors sitting on this jury that they should be stricken for cause."

The trial court then asked if the defense was asking for a mistrial.  The defense indicated that they were, in fact, asking for a mistrial.  The State responded:

I just wonder if the ones that didn't jump on the impossible bandwagon, you know, if it was put to them a little more directly about if the State doesn't prove its case even knowing that he has got a prior would you find him not guilty? I don't think we made it to that point.

The trial court acknowledged the problem, and had the following response:

I think we have got two choices here, and it is either – the only way we can save this panel is if I call these people in here one at a time and talk to them. I don't mind doing that, and I'll be glad to do that. I don't really want to kick this thing out, [defense counsel].

. . . .

I can bring them in here, but that is talking to 30 people the way I count. Given those are our two choices right now, it appears that I would rather do that then throw in the towel.

The State then recognized another option:  "The third choice would be not to kick them off, but I would be concerned we would be doing it again somewhere down the line."  The trial court stated:

What I would propose that I ask them is that they responded to the question concerning the fact that he had two previous instances. That he had two previous convictions. If they would be able to follow the law, the

9

instructions of the Court. That they are allowed to consider that, but that is not solely basis – they can't solely vote to convict him on the fact that he had prior convictions. That the State would still have to meet their burden of proof and they would have to consider all the evidence in the case and could they do that – consider all the evidence that they would hear and see, and render a fair and impartial verdict to both the State and Mr. Lechner.

Maybe we are in the same spot, I don't know. But I would be inclined to let either of you follow up with that or I can do it myself. I think our choices right now are either to throw in the towel or retry to do this. Otherwise, I don't know that there is any other choice.

The trial court then proposed a course of action to the parties:

What I am proposing that we do, Gentlemen, based on our conversations that we bring the panel back in. That I will question them. I will read to them the propensity instruction which is 401.010 [sic]. I will include the fourth subparagraph as the option to the instruction. And then we will ask them whether or not they are able to follow the law as given to them in this instruction.

If they are not able to follow the law, then we will have to deal with that appropriately. Otherwise we will proceed that way.

Neither the State nor the defense objected to proceeding in that manner. The trial court

re-convened the jury panel and read the entire panel the propensity instruction as follows:

BY THE COURT:  There were some questions asked about the fact that [Lechner] has been convicted on two prior offenses. But what I am going to do is, I am going to read to you the law that would be given to the jury at the end of this day and then I am going to ask you questions about that.

This is the instruction that would be given at the end of this case. So, I want you to listen very closely.

(As read) "[Lechner] is on trial for the offense charged. You may not find [Lechner] guilty only because you believe he may have been involved in or committed other offenses or bad acts in the past. If you find and believe from the evidence that [Lechner] previously was involved in or committed other offenses or bad acts you may consider such evidence only for the purpose stated in this instruction. If you find and believe from the evidence that [Lechner] previously committed other criminal acts, you may consider that evidence for the purpose of corroborating the victim's testimony and or [sic] demonstrating [Lechner's] propensity to commit the offense for which he is charged in this case. Again, you cannot find him guilty only because you believe he may have been involved in other acts."

Okay. Now, is there anyone on this panel that will not be able to follow that instruction?

(No response.)

10

Now, previously there had been some discussion and I think in response to some answers that it would be hard or it would be difficult or something like that. I understand that. Given that I have provided you with what the law is in this case, is there anybody on this panel that would not be able to follow the law as given to you by this Court?

I see no hands.

[State], anything further?

[STATE]: No, your Honor.

BY THE COURT: [Defense counsel], anything further?

[DEFENSE COUNSEL]: No, your Honor.

After the panel was excused, the trial court overruled Lechner's motion for mistrial. The defense then moved to strike Venirepeople Nos. two, seven, 23, and 34 for cause. After both parties announced their strikes for cause again, the trial court announced those stricken for cause included Venirepeople Nos. two, six, seven, eight, 10, 12, 20, 23, 26, 48, 52, 60, 63, and 68.[3] Following peremptory strikes, Venireperson 35 (now "Juror 35") served on the jury and participated in the verdict.

*Victim's Testimony at Trial*

At trial, Victim testified that she was not good at remembering dates, and that she believed this incident happened when she was still in the sixth grade. She could not give any indication of what time of year the incident occurred. Victim did testify, however, that she informed her grandmother of the incident about two or three weeks later, on March 25, 2022. Victim's grandmother reported the incident on March 25, 2022, the

---

[3] The defense's motion to strike Venireperson No. 34 for cause was denied. After listing the initial strikes for cause (Venirepeople Nos. two, six, seven, eight, 10, 20, 23, 26, 48, 52, 60, 63, and 68), the trial court asked, "[a]ny other for cause?" In response, the defense moved to strike Venireperson No. 12 and she was stricken. The trial court then asked again, "[a]ny further for cause, [defense counsel]," to which he replied "[n]o, your Honor."

same day Victim informed her. Victim's grandmother stated in her testimony that "[i]t was about a week and a half maybe two weeks" after the incident. During trial, Victim's forensic interviewer stated that Victim had trouble remembering times and dates.

*Instruction No. 5*

The verdict directing instruction for Count I, child molestation in the first degree, was submitted by the State as Instruction No. 5. It read as follows:

INSTRUCTION NO. 5

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or between January 28, 2022, and March 25, 2022, in the State of Missouri, [Lechner] touched the breast of [Victim], a female person, through the clothing with his hand, and

Second, [Lechner] did so for the purpose of gratifying [Lechner's] sexual desire,

    and

Third, that [Victim] was a child less than fourteen years of age,

then you will find [Lechner] guilty under Count I of child molestation in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [Lechner] not guilty of that offense.

The defense did not object to any of the jury instructions, including Instruction No. 5.

The jury found Lechner guilty of child molestation in the first degree. Lechner filed a timely motion for new trial. The trial court denied the motion for new trial, and sentenced Lechner to twenty years' imprisonment in the Department of Corrections, to be served consecutively to the sentence imposed in his prior offense. This timely appeal follows.

**Points I and II**

In Point I, Lechner claims the trial court erred by allowing the State to file its Third Amended Felony Information on the morning of trial because it "added new allegations to the charge" and Lechner was "not allowed sufficient time to prepare a defense and decide on a trial strategy." In Point II, Lechner contends the trial court erred by denying Lechner's Motion for Continuance after the Third Amended Felony Information was filed that added "a different range of dates the incident could have occurred on," and "the language that the sexual touching was 'through the clothing' and 'for the purpose of arousing or gratifying the sexual desire of [Lechner]'" because he "was not allowed sufficient time to prepare a defense and decide on a trial strategy." We disagree with Lechner's contentions on both points. Both Points I and II challenge alleged trial court errors stemming from the addition of language in the Third Amended Felony Information filed the morning of trial and Lechner's alleged inability to prepare a defense resulting therefrom. Because these two claims fail for similar reasons, we address these points together.

*Standard of Review*

"This Court reviews a trial court's decision to allow an amendment of a charging document for abuse of discretion." ***State v. Lambert***, 589 S.W.3d 116, 118 (Mo. App. S.D. 2019) (quoting ***State v. Seeler***, 316 S.W.3d 920, 925 (Mo. banc 2010)). We also review the decision to grant or deny a motion for continuance for an abuse of discretion. ***State v. Swearinger***, 699 S.W.3d 232, 241 (Mo. App. E.D. 2024) (citing ***State v. Jones***, 479 S.W.3d 100, 111 (Mo. banc 2016)). A reviewing court will find an abuse of discretion only "where the trial court's ruling is clearly against the logic of the

13

circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." ***State v. Beck***, 383 S.W.3d 42, 45 (Mo. App. E.D. 2012).

*Analysis*

Rule 23.01(b)(2) mandates that an information: "State plainly, concisely, and definitely the essential facts constituting the elements of the offense charged, including facts necessary for any enhanced punishment[.]"  Hence, to be legally sufficient, an "information must contain the essential elements of the offense charged as set out in the statute or statutes that define the offense." ***State v. Briscoe***, 847 S.W.2d 792, 794 (Mo. banc 1993).  As stated in ***State v. Nicholson***, 839 S.W.2d 593, 595 (Mo. App. W.D. 1992), the purposes of an information are:  "first, to inform the defendant of the charges filed against him so he can adequately prepare his defense; second, to preclude his retrial on the same issues; and third, to allow the trial court to determine whether sufficient facts are alleged to support the conviction."  Further,

> [t]he Sixth Amendment of the U.S. Constitution and article I, section 18(a) of the Missouri Constitution require that a criminal defendant be given notice of the charge or charges against him to allow him the opportunity to adequately prepare a defense. The charging instrument, the information or indictment, serves that purpose. Thus, as a general rule, due process mandates that a criminal defendant may not be convicted of an offense not expressly charged in the information or indictment.

***State v. Collins***, 154 S.W.3d 486, 494 (Mo. App. W.D. 2005) (internal citations omitted).

Rule 23.08 governs the amendment or substitution of an information.  It provides:

> Any information may be amended or an information may be substituted for an indictment at any time before verdict or finding if:
>
> (a) No additional or different offense is charged, and
> (b) A defendant's substantial rights are not thereby prejudiced.

No such amendment or substitution shall cause delay of a trial unless the court finds that a defendant needs further time to prepare a defense by reason of such amendment or substitution.

Rule 23.08. "If either prong is not satisfied, then Rule 23.08 is violated and the trial court shall not allow the amended information to be filed." *State v. Heidbrink*, 670 S.W.3d 114, 126 (Mo. App. E.D. 2023) (citing *Lambert*, 589 S.W.3d at 119). An additional or different offense is charged if "the elements of the two offenses are different." *State v. Davies*, 330 S.W.3d 775, 793 (Mo. App. W.D. 2010) (quoting *State v. Smith*, 242 S.W.3d 735, 742 (Mo. App. S.D. 2007)). "The test for 'prejudice' under Rule 23.08 is (1) whether a defense to the charge as originally made would be equally available after the amendment, and (2) whether the defendant's evidence would be equally applicable after, as well as before, the amendment." *State v. Nelson*, 505 S.W.3d 437, 443 (Mo. App. W.D. 2016) (*State v. Messa*, 914 S.W.2d 53, 54-55 (Mo. App. W.D. 1996)).

At trial, the State sought leave to amend the Amended Felony Information because it recognized that a required element of the charge was missing from the language of the information in violation of Rule 23.01(b)(2). Defense counsel objected to the State filing the Third Amended Felony Information because he had identified the State's error, that the Amended Felony Information omitted the language, that "[Lechner] acted for the purpose of arousing or gratifying the sexual desire of [Lechner]," which was a required element of the charged crime. The defense had prepared a Motion to Dismiss or a Motion for Judgment of Acquittal that it was going to file at the close of the State's case. The defense failed, however, to claim or argue any valid defense Lechner was precluded from pursuing at trial or how the proposed amendment required additional time for the defense to decide on trial strategy. The defense also failed to argue how adding

15

the different range of dates prejudiced Lechner.  Therefore, the trial court, not seeing any

prejudice to the defense, granted the State's motion stating,

> I don't believe that there has been any surprise on behalf of [Lechner]. It may not – All it appears to me is that he corrected the mistake that you had – or the omission that you had previously identified. I don't see that there is any prejudice to the defense by proceeding.

The essence of Lechner's argument on appeal remains the same, that the trial

court erred in allowing the State to file the Third Amended Felony Information because

allowing the State to correct the error in the Amended Felony Information prevented

Lechner from filing its "gotcha" motion when it was too late for the State to correct the

erroneous information.  Lechner does not claim, nor can he demonstrate, that the first

prong of Rule 23.08 was not satisfied because no additional or different offense was

charged in the Third Amended Felony Information.  The Amended Felony Information

charged Lechner with child molestation in the first degree.  The Third Amended Felony

Information charged Lechner with child molestation in the first degree and charged child

molestation in the third degree as an alternative.  The lesser-included offense of child

molestation in the third degree does not constitute an additional or different offense, but

rather an alternative offense.[4]  *See* ***Reeves v. State***, 726 S.W.2d 366, 369 (Mo. App. W.D.

---

[4] "A lesser-included offense is an offense established by proof of the same or less than all the facts required to establish the commission of the charged offense." ***State v. Whitney***, 697 S.W.3d 117, 126 (Mo. App. S.D. 2024) (quoting ***State v. Coker***, 210 S.W.3d 374, 380 (Mo. App. S.D. 2006)).  "If the greater of two offenses includes all the legal and factual elements of the lesser, then the lesser is an included offense." ***State v. Myers***, 291 S.W.3d 292, 298 (Mo. App. S.D. 2009) (quoting ***State v. Whiteley***, 184 S.W.3d 620, 623 (Mo. App. S.D. 2006)).  Child molestation in the third degree is a lesser-included offense of child molestation in the first degree.

1987) (holding that an information amended to charge a lesser-included offense does not charge a "different" offense under Rule 23.08).

Instead, Lechner's arguments focus on the second prong of Rule 23.08, that his substantial rights were prejudiced when the trial court allowed the State to file the Third Amended Felony Information because (1) the addition of the language "for the purpose of arousing or gratifying the sexual desire of the defendant" and "by touching her breast through the clothing" added new allegations to the charge and Lechner "was not allowed sufficient time to prepare a defense and decide on a trial strategy"; and (2) the Third Amended Felony Information changed the date range that the charged crimes occurred. Because Lechner raises his second theory of prejudice regarding the change to the range of dates for the first time on appeal, we decline to consider it here and focus our analysis on whether the additional language prevented Lechner from having sufficient time to prepare a defense.[5]

---

[5] To preserve a claim for appellate review, "[t]he objection at trial must be specific and made contemporaneously with the purported error." *State v. Driskill*, 459 S.W.3d 412, 426 (Mo. banc 2015). "Only an objection made timely *at trial* will preserve an issue for appeal." *Petersen v. State*, 658 S.W.3d 512, 515 (Mo. banc 2022) (quoting *State v. Minor*, 648 S.W.3d 721, 729 (Mo. banc 2022)). "An objection presented to the circuit court may not be broadened on appeal." *Id.* at 516. Because Lechner failed to preserve his argument at trial, we decline to consider it.

Further, even if the issue was preserved, Lechner presents no argument or law to support his claim that broadening the range of dates the abuse occurred was prejudicial error. "Mere conclusions and the failure to develop an argument with support from legal authority preserve nothing for review." *Hiner v. Hiner*, 573 S.W.3d 732, 736 (Mo. App. W.D. 2019) (quoting *Wallace v. Frazier*, 546 S.W.3d 624, 628 (Mo. App. W.D. 2018)). Where appellant fails to support arguments with relevant law, we deem the point abandoned. *Pickett v. Bostwick*, 667 S.W.3d 653, 661 (Mo. App. W.D. 2023) (citing *Wallace*, 546 S.W.3d at 628).

Lechner acknowledges the additional language added to the Third Amended Felony Information, "for the purpose of arousing or gratifying the sexual desire of the defendant[,]" was an element of child molestation in the first degree and was required to be included in the charge. He maintains on appeal he was prejudiced by the addition of this language because he had identified the defect in the charging document, that it was missing this required element of the charge, and he had prepared a Motion to Dismiss or a Motion for Judgment of Acquittal that he was going to file at the end of the State's case. He claims that by fixing the defect in the charging document, the information "went from an information that did not charge the essential elements of a crime, to an information that did charge the essential elements of a crime – hence he went from no charge to a valid charge. Mr. Lechner's defense of a defective information was no longer available to him."

We find Lechner's claim that he was prejudiced because he was deprived of a "defense" to be disingenuous. Rather than being deprived of an actual defense to the charged crimes, the crux of Lechner's claim is that allowing the State to correct its mistake prevented Lechner from having a successful route to dismissal or acquittal. Clearly, the defense was aware of the required elements of the charge, otherwise they would not have realized the State's omission and prepared their Motion to Dismiss or a Motion for Judgment of Acquittal on that basis. Rather than being denied a true defense, the motions Lechner wished to file at the close of the State's evidence were based on the sufficiency of the Third Amended Felony Information and do not qualify as a "defense to the charge" under the test for prejudice under Rule 23.08. Prejudice arises from an insufficient information if the information was "so lacking in clarity that the defendant

18

was unable properly to prepare a defense." ***Smith***, 242 S.W.3d at 740 (quoting ***State v. Williams***, 126 S.W.3d 377, 381 (Mo. banc 2004), *as modified on denial of reh'g* (Feb. 24, 2004)). Moreover, "[a] defendant who claims a charging instrument is insufficient because it does not include an essential element of the crime charged does not demonstrate actual prejudice where he fails to identify an aspect of his defense that was hindered due to the variance of the information from the statute." ***Williams***, 126 S.W.3d at 381. Lechner fails to identify any aspect of his defense to the charge that was hindered.[6] Challenging the sufficiency of the information is not a defense to the charge in and of itself, but instead challenges the ability to prepare and argue a certain defense based on the insufficient language in the charging document.

Further, even if a challenge to the sufficiency of the information is a "defense" contemplated by Rule 23.08, a challenge to the sufficiency of information is timely only if the challenge was raised by motion before trial. ***State v. Carlock***, 242 S.W.3d 461, 464 (Mo. App. S.D. 2007) (citing Rule 24.04(b)(2)). Lechner did not plan to file his motions until the State presented its case in chief, which would have made the challenge untimely. If the challenge is untimely, the information

---

[6] Both the Amended Felony Information and the Third Amended Felony Information charged Lechner with child molestation in the first degree, and the Third Amended Felony Information charged, in the alternative, the lesser-included offense of child molestation in the third degree. Because both informations referred to the same charge arising from the same conduct, Lechner's defenses to the charges and evidence required to prove his defenses were equally available both before and after the amendment. *See **State v. Shutters***, 697 S.W.3d 13, 20 (Mo. App. S.D. 2024) (holding that where both the original and the amended information referred to the same charge arising from the exact same conduct, defendant's defenses were equally available both before and after the amendment and defendant's substantial rights were not prejudiced).

19

> will not be deemed insufficient unless it is so defective that "(1) it does not by any reasonable construction charge the offense of which the defendant was convicted or (2) the substantial rights of the defendant to prepare a defense and plead former jeopardy in the event of acquittal are prejudiced."

*State v. Cerna*, 522 S.W.3d 373, 381 (Mo. App. E.D. 2017) (quoting *Carlock*, 242 S.W.3d at 464). "A defendant suffers actual prejudice if the information or indictment was either so deficient that the defendant was not placed on notice as to what crime he or she was being charged with or was so lacking in clarity that the defendant was unable properly to prepare a defense." *Id.* at 381-82 (quoting *Carlock*, 242 S.W.3d at 464).

Here, Lechner did not plan to raise the issue of sufficiency of the Amended Felony Information until the close of the State's evidence in an attempt to make an "end-run around Missouri Supreme Court Rules and the purpose of an [information]: to allow the accused 'to make his defense and to enable him to assert double jeopardy in bar of a further prosecution.'" *Id.* at 382 (quoting *State v. Edwards*, 510 S.W.3d 374, 379 (Mo. App. E.D. 2017)). Thus, Lechner's motions challenging the sufficiency of the information would have been untimely. Lechner would have been required to show that the Amended Felony Information did not by any reasonable construction charge the offense of which he was convicted or that his substantial rights to prepare a defense and plead former jeopardy in the event of acquittal are prejudiced. That he could not do.

"A charging document is sufficient if 'it contains all the essential elements of the offense as set out in the statute creating the offense.'" *State v. Gray*, 446 S.W.3d 291, 293 (Mo. App. W.D. 2014) (quoting *State v. Haynes*, 17 S.W.3d 617, 619 (Mo. App. W.D. 2000)). Here, Lechner was charged with violating section 566.067, which states, "A person commits the offense of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact and the

20

offense is an aggravated sexual offense."  Section 566.067.1.  "Sexual contact" is statutorily defined as "any touching of another person . . . for the purpose of arousing or gratifying the sexual desire of any person . . . [.]"  Section 566.010(6).  Because "sexual contact" is statutorily defined, Lechner was aware that the State was alleging that his alleged actions were for "the purpose of arousing or gratifying [his] sexual desire[.]"  *See Gray*, 446 S.W.3d at 294 (holding that because "sexual desire" is statutorily defined, the defendant was sufficiently notified of the charge and could not show he was prejudiced by failure to explicitly include the language in the charging document).

Lechner's argument that the filing of the Third Amended Felony Information deprived him of the opportunity to file his Motion to Dismiss or a Motion for Judgment of Acquittal challenging the sufficiency of the Amended Felony Information after the State's case, which were both untimely and non-meritorious, fails.  The inability to file untimely and non-meritorious motions does not establish that Lechner's substantial rights were prejudiced requiring the trial court to deny the filing of the Third Amended Felony Information.  Point I is denied.

Lechner claims in Point II that the trial court abused its discretion in denying Lechner's motion for continuance when the State filed the Third Amended Felony Information on the morning of trial.  The record reflects, however, that Lechner only made a passing reference at trial to wanting a continuance.  He gave no explanation as to why he needed a continuance and presented no argument supporting his reference to a

continuance.[7]  On appeal, Lechner makes the same argument he did in Point I, that allowing the amendment deprived him of his "defense" to move for dismissal of the case or for judgment of acquittal at the close of the State's case in chief due to the absence of the required sexual gratification language in the Amended Felony Information.  For the same reasons Lechner's claim fails in Point I, and because Lechner fails to establish how his trial strategy would have changed if a continuance had been granted, he fails to establish he was prejudiced by the trial court's denial of his continuance request.  Point II is denied.

## Point III

Lechner claims in Point III the trial court

abused its discretion in not granting the defense's request for a mistrial when the majority (43 out of 72 venirepersons) of the jury panel indicated they could not, or would have difficulty, giving Mr. Lechner a fair trial after they learned he had two previous convictions for sexually touching a minor[.]

Lechner argues that the trial court was required to either individually rehabilitate each potential juror or strike them for cause and declare a mistrial.  We disagree.

### Standard of Review

"A defendant in a criminal case is entitled to a full panel of qualified jurors before he is required to make his peremptory challenges."  *State v. Evans*, 701 S.W.2d 569, 572 (Mo. App. E.D. 1985).  "The trial court has wide discretion in determining the qualifications of [venirepersons] and its ruling on a challenge for cause will not be

---

[7] We further note that Lechner's request for a continuance should have been "set forth in writing" stating "the facts upon which the motion [was] based" unless the State consented or the trial court found good cause, neither of which happened here.  Rule 24.09.

disturbed in the absence of a clear abuse of discretion." *Id.* A defendant bears the

burden of showing prejudice when he claims partiality on the part of the panel. *State v.*

*Cammack*, 813 S.W.2d 105, 107 (Mo. App. E.D. 1991). "The trial court is in the best

position to determine the qualifications of the jury panel because it can judge the

demeanor of venirepersons as well as their answers to *voir dire* questions." *State v.*

*Pendleton*, 688 S.W.3d 21, 24 (Mo. App. W.D. 2024). "The relevant question is whether

a venireperson's beliefs preclude following the court's instructions so as to 'prevent or

substantially impair the performance of his duties as a juror in accordance with his

instructions and his oath.'" *State v. Johnson*, 22 S.W.3d 183, 187 (Mo. banc 2000)

(quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)).

"A mistrial is a drastic remedy which is to be used only in the most extraordinary

circumstances when there is a grievous error which cannot otherwise be remedied." *State*

*v. Norris*, 237 S.W.3d 640, 644 (Mo. App. S.D. 2007) (citing *State v. Davis*, 122 S.W.3d

690, 692 (Mo. App. E.D. 2003)). The decision whether or not to grant a mistrial is left to

the discretion of the trial court as it is "in the best position to determine whether the

incident had a prejudicial effect on the jury." *Sherrer v. Boston Sci. Corp.*, 609 S.W.3d

697, 716 (Mo. banc 2020) (quoting *State v. Ward*, 242 S.W.3d 698, 704 (Mo. banc

2008)). Refusal to grant a mistrial is reviewed under an abuse of discretion standard.

*State v. Priest*, 585 S.W.3d 397, 400 (Mo. App. S.D. 2019) (citing *State v. Guske*, 501

S.W.3d 922, 923 (Mo. App. S.D. 2016)). "An abuse of discretion occurs when the trial

court's ruling is clearly against the logic of the circumstances . . . and is so unreasonable

and arbitrary that it shocks one's sense of justice and indicates a lack of careful

23

consideration." ***Beverly v. Hudak***, 545 S.W.3d 864, 869 (Mo. App. W.D. 2018) (citing

***Westerman v. Shogren***, 392 S.W.3d 465, 469 (Mo. App. W.D. 2012)).

*Analysis*

> When a criminal defendant invokes his or her right to a jury trial, the Sixth and Fourteenth amendments entitle that defendant to a panel of impartial, indifferent jurors whose verdict must be based upon evidence developed at the trial. *Johnson v. State*, 406 S.W.3d 892, 910 (Mo. banc 2013). The parties are entitled to ask questions to "help determine whether a venire member holds prejudices or biases that would impair the performance of his or her duties. If prejudices are discovered, an inquiry should take place to reveal whether a juror can set aside prejudices and impartially fulfill his or her obligations as a juror." *State v. Edwards*, 116 S.W.3d 511, 529 (Mo. banc 2003).

***State v. Ess***, 453 S.W.3d 196, 203 (Mo. banc 2015). "Venirepersons must have an 'open

mind, free from bias and prejudice.'" ***Id.*** (quoting ***State v. Mayes***, 63 S.W.3d 615, 624

(Mo. banc 2001)).

When a venireperson's answer suggests potential bias, further questioning that

gives unequivocal assurances of impartiality will rehabilitate the juror. ***State v. Garrison***,

276 S.W.3d 372, 377 (Mo. App. S.D. 2009) (citing ***State v. Clark-Ramsey***, 88 S.W.3d

484, 489 (Mo. App. W.D. 2002)). "A prospective juror's silence in response to a direct

question posed to the entire venire panel can provide an 'unequivocal assurance of

impartiality for the purpose of rehabilitation.'" ***State v. Edmond***, 675 S.W.3d 235, 242

(Mo. App. E.D. 2023) (quoting ***State v. Spradling***, 633 S.W.3d 494, 501 (Mo. App. S.D.

2021)).

Here, defense counsel specifically stated:

> I anticipate that there is going to be some evidence in this case that [Lechner] has previously been found guilty of touching a different child on a different date, and that evidence will come in on the question of propensity. And propensity means the more likely to have committed this type of crime because he had done something similar in the past.

24

After Venireperson No. 60 answered that he could not be fair to Lechner in this case, defense counsel asked if anyone else felt the same way. Several venirepeople raised their hands. Defense counsel rephrased his question and asked, "[I]s there anyone now that I have told you that there is going to be evidence of his prior incidence [sic] you would just automatically say, well, there goes the presumption of innocence I would find him guilty right now based on that."

After this question was asked, several venirepeople raised their hands. Defense counsel followed up with 43 of them individually and they each responded that they could not, or it would be difficult, to be fair to Lechner knowing about his two prior convictions. After some additional questions were asked of the venire panel, the parties made arguments to the trial court regarding strikes for cause.

Defense counsel informed the trial court that he had a number of venirepeople who indicated that they were going to have trouble with propensity and asked that they be stricken. The trial court asked, "Do you have specifics or are you talking about the entire list?" Defense counsel responded, "I would suggest that all the ones that said that they would have difficulty just because of the priors sitting on this jury that they should be stricken for cause." The trial court then asked if the defense was asking for a mistrial, and the defense indicated they were.

After additional discussion of how to proceed, the trial court proposed a course of action to the parties:

> What I am proposing that we do, Gentlemen, based on our conversations that we bring the panel back in. That I will question them. I will read to them the propensity instruction which is 401.010 [sic]. I will include the fourth subparagraph as the option to the instruction. And then we will ask

them whether or not they are able to follow the law as given to them in this instruction.

    If they are not able to follow the law, then we will have to deal with that appropriately. Otherwise we will proceed that way.

Neither the State nor the defense objected to proceeding in that manner. The trial court re-convened the jury panel and read the entire panel the propensity instruction.

    (As read) "The defendant is on trial for the offense charged. You may not find the defendant guilty only because you believe he may have been involved in or committed other offenses or bad acts in the past. If you find and believe from the evidence that the defendant previously was involved in or committed other offenses or bad acts you may consider such evidence only for the purpose stated in this instruction. If you find and believe from the evidence that the defendant previously committed other criminal acts, you may consider that evidence for the purpose of corroborating the victim's testimony and or demonstrating the defendant's propensity to commit the offense for which he is charged in this case. Again, you cannot find him guilty only because you believe he may have been involved in other acts."

When the trial court finished reading the instruction, it asked if there was anyone on the panel who would not be able to follow that instruction. Nobody responded.

    The trial court then stated,

    Now, previously there had been some discussion and I think in response to some answers that it would be hard or it would be difficult or something like that. I understand that. Given that I have provided you with what the law is in this case, is there anybody on this panel that would not be able to follow the law as given to you by this Court?

Again, no one responded. The trial court then asked both the State and the defense if they had anything further. Both parties responded they did not. None of the 43 venirepersons were individually rehabilitated by the trial court. After the panel was excused from the courtroom, the trial court overruled Lechner's motion for mistrial. Defense counsel did not renew his motion to strike the entire list who said they would have difficulty sitting on the jury just because of Lechner's prior convictions after the

26

trial court read the propensity instruction to them. He also did not renew his request for a mistrial. Out of the 43 venirepersons defense counsel moved to strike, four made it on the jury, Venireperson Nos. 5, 16, 21, and 35.

Lechner argues that the trial court was required to individually question each venireperson who expressed they could not be fair, or would have difficulty being fair to Lechner given his prior convictions. Missouri law does not so require. Specific questions "designed to elicit unequivocal assurances of impartiality must be asked" to successfully rehabilitate a juror. *White v. State*, 290 S.W.3d 162, 166 (Mo. App. E.D. 2009) (citing *James v. State*, 222 S.W.3d 302, 305 (Mo. App. W.D. 2007)). A prospective juror may only be rehabilitated if the rehabilitation is "*responsive to the indication of partiality*[,]" providing there is a "clear, unequivocal assurance that the juror would not be partial." *State v. Savage*, 609 S.W.3d 71, 84 (Mo. App. W.D. 2020) (emphasis added) (quoting *White*, 290 S.W.3d at 166). A question posed to the entire venire panel, and a venireperson's silence in response to the question, is sufficient to rehabilitate a panel member who equivocates about their ability to be fair and impartial. *See Edmond*, 675 S.W.3d at 242 (quoting *Spradling*, 633 S.W.3d at 501) (holding that a prospective juror's silence in response to direct questioning posed to the entire panel provides "unequivocal assurance of impartiality for the purpose of rehabilitation").

Here, the trial court read the propensity instruction to the jury and followed with a question regarding whether there was anyone who could not follow that instruction. The question was specific to propensity evidence, not a general statement of whether the venirepersons could generally follow the trial court's instructions. Nobody raised their hand or verbally responded that they could not follow the trial court's instruction with

regard to propensity evidence. No further questions were asked to the venire panel or individual venirepersons after they were rehabilitated.

Further, even if the venirepersons were not sufficiently rehabilitated, Lechner acquiesced in the trial court's suggested procedure to rehabilitate the venirepersons and cannot complain about it on appeal. The trial court stated its intent to read the propensity instruction to the entire panel and to ask the panel members if they could follow the law as given in that specific instruction. The defense agreed with the trial court's plan and voiced no objection or concern with the trial court handling the attempted rehabilitation in that manner. "A criminal defendant . . . cannot complain about any alleged error he or she joined in or acquiesced to through his or her own conduct at trial." *State v. Strickland*, 676 S.W.3d 478, 483 (Mo. App. S.D. 2023).[8]

Because the trial court rehabilitated the jurors as a group with the defense's agreement, and without further objection from the defense as to these jurors as a whole, the trial court did not abuse its discretion in failing to strike the venirepersons and grant Lechner's request for a mistrial. Point III is denied.

**Points IV and V**

In Points IV and V, Lechner claims the trial court abused its discretion (1) when it failed to strike Venireperson No. 35 for cause because he "admitted in voir dire that his

---

[8] "Moreover, under section 494.480.4, RSMo, denials of challenges for cause—even if erroneous—are not a basis for reversal of a conviction or for granting a new trial where such venirepersons do not actually sit on the jury, that determines guilt and/or recommends punishment." *State v. Nicklasson*, 967 S.W.2d 596, 612 (Mo. banc 1998). While Lechner argues the trial court was erroneous in failing to strike or rehabilitate all 43 jurors, only four of the jurors in question sat on the jury. Thus, Lechner has no basis to argue the trial court erred on all 43 potential jurors where only four sat on the jury.

mind was already made up and he was thus disqualified to serve as a juror under Sect. 494.470" (Point IV) and (2) when it failed to strike Venireperson Nos. 16, 21, and 35 because they "denied they could be fair to Mr. Lechner, or were equivocal when asked about whether they could be fair to Mr. Lechner after learning he had prior convictions of sexually touching a minor" (Point V). Venireperson Nos. 16, 21, and 35 were a part of the larger group of venirepeople that Lechner moved to strike and requested a mistrial based on their answers as discussed in Point III herein. Because we determined these jurors were sufficiently rehabilitated by the trial court using the procedure both the State and Lechner agreed upon and the same analysis applies here, these points are moot. To the extent Lechner attempts to assert additional claims of error here that were not included and decided in Point III, Lechner failed to raise these issues both at trial and in his motion for new trial. Lechner never moved to strike Venireperson Nos. 16, 21, or 35, and he never argued Venireperson No. 35 was disqualified to serve as a juror under section 494.470.[9] As such, these claims are not preserved for review and we decline to engage in plain error review.

*Standard of Review and Preservation*

Lechner did not move to individually strike Venireperson Nos. 16, 21, or 35 for any reason before the jury was seated, and he did not challenge their service on the jury specifically in his Motion for New Trial. Lechner argues his claims in Points IV and V

---

[9] Section 494.470.1 states:

> 1. No witness or person summoned as a witness in any cause, no person who has formed or expressed an opinion concerning the matter or any material fact in controversy in any case that may influence the judgment of such person, and no person who is kin to either party in a civil case or to the injured party, accused, or prosecuting or circuit attorney in a criminal case within the fourth degree of consanguinity or affinity shall be sworn as a juror in the same cause.

29

are preserved, but if this Court determines they are not, Lechner requests plain error review.

"[A] point is preserved for appellate review only if it is based on the same theory presented at trial." *State v. Rice*, 573 S.W.3d 53, 63 (Mo. banc 2019) (quoting *State v. Johnson*, 207 S.W.3d 24, 43 (Mo. banc 2006)). "When the defendant is aware of facts which would sustain a challenge for cause, [they] must present [their] challenge during the voir dire examination or prior to the swearing of the jury, otherwise, the point is waived." *State v. Marr*, 499 S.W.3d 367, 376 (Mo. App. W.D. 2016) (quoting *State v. Gable*, 946 S.W.2d 16, 18 (Mo. App. S.D. 1997)).

> "The rule requiring contemporaneous objections to the qualifications of jurors is well founded. It serves to minimize the incentive to sandbag in the hope of acquittal and, if unsuccessful, mount a post-conviction attack on the jury selection process." *State v. Hadley*, 815 S.W.2d 422, 423 (Mo. banc 1991). "For that reason, juror challenges made for the first time after a conviction are highly suspect." *Id.*

*State v. Baumruk*, 280 S.W.3d 600, 615 (Mo. banc 2009). In addition, Rule 29.11(d) requires, except in circumstances not applicable here, that in jury-tried cases, "allegations of error to be preserved for appellate review must be included in a motion for new trial." Rule 29.11(d); *State v. Nichols*, 618 S.W.3d 747, 749 (Mo. App. S.D. 2021) (citing *State v. Loper*, 609 S.W.3d 725, 733 (Mo. banc 2020)).

Here, when defense counsel asked the jury panel if they could be fair if they knew Lechner had two prior convictions for sexually touching a minor, Venireperson Nos. 16, 21, and 35 replied:

> [DEFENSE COUNSEL]: So, the priors would make it hard for you to give him a fair trial on the new case?
>
> BY VENIREPERSON 3: Definitely.

30

[DEFENSE COUNSEL]: Number 6.

BY VENIREPERSON 6: Same.

[DEFENSE COUNSEL]: Same. Again, don't let me put words in your mouth, the prior conviction would make it hard for you to sit in this case?

BY VENIREPERSON 6: Yes.

[DEFENSE COUNSEL]: Number 2.

BY VENIREPERSON 2: I agree with him.

[DEFENSE COUNSEL]: Anybody else on the second row. Number 14.

BY VENIREPERSON 14: I agree.

[DEFENSE COUNSEL]: It would be hard for you to give Mr. Lechner a fair trial on the current charge because of the prior conviction?

BY VENIREPERSON 14: Yes, sir.

[DEFENSE COUNSEL]: Number 15.

BY VENIREPERSON 15: Yes, it would be difficult.

[DEFENSE COUNSEL]: For the same reason?

BY VENIREPERSON 15: Yes.

[DEFENSE COUNSEL]: Number 16.

BY VENIREPERSON 16: Yes.

. . . .

[DEFENSE COUNSEL]: So, the mere fact that Mr. Lechner has two prior convictions would make it difficult or impossible for you to give him a fair trial?

BY VENIREPERSON 12: Yes.

[DEFENSE COUNSEL]: Number 9.

BY VENIREPERSON 9: Yes, I feel the same way they do.

31

[DEFENSE COUNSEL]:  Number 8.

BY VENIREPERSON 8:  Same way.

[DEFENSE COUNSEL]:  Number 20:

BY VENIREPERSON 20:  Difficult.

[DEFENSE COUNSEL]:  Number 21.

BY VENIREPERSON 21:  I would find it difficult to not consider his priors.

. . . .

[DEFENSE COUNSEL]:  Number 35, do you feel the same way [that it would be hard to be fair knowing of Mr. Lechner's prior convictions]?

BY VENIREPERSON 35:  Yeah, I have already sat on a jury on a case just like this, and I have pretty well got my mind made up.

[DEFENSE COUNSEL]:  Okay. Your mind being made up being you could not give a fair trial to either the State or [Lechner]?

BY VENIREPERSON 35:  Right.

Lechner did not seek to strike any individual jurors for cause, including Venireperson Nos. 16, 21, or 35, until after the trial court rehabilitated the venire panel as a whole and his motion for mistrial was denied.  Even then, he never moved to strike Juror Nos. 16, 21, or 35, specifically.  The trial court read the strikes for cause that it marked down, including Venireperson Nos. "eight, 10, 63, 68, 26, 48, 20, 60, [and] 52."  The trial court then asked defense counsel if he had additional strikes for cause.  Defense counsel moved to strike Venireperson Nos. two, six, seven, 23, and 34.  He then stated, "I believe that is all for cause, your Honor."  The trial court then announced those stricken for cause as Venireperson Nos. two, six, seven, eight, 10, 20, 23, 26, 48, 52, 60, 63, and 68.

Moreover, in his Motion for a New Trial, Lechner did not argue that the trial court failed to strike any venireperson specifically, including Venireperson Nos. 16, 21, or 35, but instead argued that the trial court erred in failing to strike the entire jury pool and declare a mistrial when multiple potential jurors indicated they would have difficulty participating fairly if they learned he had previously been found guilty of two separate child molesting charges. Therefore, we determine Lechner did not preserve Points IV and V for appellate review.

Despite Lechner's waiver, this Court may consider whether plain error occurred. *See Baumruk*, 280 S.W.3d at 616 (citing *Hadley*, 815 S.W.2d at 423). "Issues not preserved for appeal may be reviewed only for plain error." *State v. Boyd*, 659 S.W.3d 914, 926 (Mo. banc 2023). Plain errors affecting substantial rights may be considered by the appellate court where the court finds that "manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. "Plain error review is discretionary, and this Court will not review a claim for plain error unless the error 'facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted.'" *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020) (quoting *State v. Clay*, 533 S.W.3d 710, 714 (Mo. banc 2017)). An appellate court should decline to review for plain error where there is no showing of manifest injustice or a miscarriage of justice. *State v. Jones*, 427 S.W.3d 191, 195-96 (Mo. banc 2014). The defendant must show "not only that the trial court committed evident, obvious, and clear error, but also the existence of manifest injustice or a miscarriage of justice." *State v. Stuckley*, 573 S.W.3d 766, 768 (Mo. App. S.D. 2019) (citing *State v. Mueller*, 568 S.W.3d 62, 75 (Mo. App. S.D. 2019)).

"The plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review." *State v. Jones*, 427 S.W.3d 191, 195 (Mo. [banc] 2014). Moreover, "[n]ot all prejudicial error – that is, reversible error – can be deemed plain error. Rather, a defendant's Rule 30.20 burden is much greater – not merely to show prejudice, but manifest injustice or a miscarriage of justice – which in this context means outcome-determinative error." *State v. Jones*, 530 S.W.3d 525, 529 (Mo. App. E.D. 2017) (citations and internal quotation marks omitted).

*State v. Pike*, 614 S.W.3d 651, 656 (Mo. App. W.D. 2021).

*Analysis*

While *Baumruk* holds that a circuit court's failure to strike a juror for cause is subject to plain-error review, the Supreme Court's discussion indicates that it will be a rare case in which plain error is found based on a trial court's failure to strike a juror *sua sponte*. The Court explained:

"[A] trial court is under no duty to strike a juror on its own motion." *Hadley*, 815 S.W.2d at 424. In *State v. Overby*, this Court emphasized that "[t]he absence of any showing by the transcript that the juror was challenged precludes [the Court's] finding that the trial court erred in the respect charged." 432 S.W.2d 277, 279 (Mo. 1968). "The trial court was under no duty to strike the juror on its own motion." *Id.* Furthermore, "[t]rial strategy is a significant consideration and such assertions of plain error are normally denied without comment.

Here, defense counsel failed to strike peremptorily Mr. Matlock or seek to strike him for cause. As such, this challenge is highly suspect. *See Hadley*, 815 S.W.2d at 423. The trial court in Mr. Baumruk's proceedings was under no duty to strike Mr. Matlock on its own motion, and, therefore, there was no evident, obvious or clear error.

*Id.* at 657 (quoting *Baumruk*, 280 S.W.3d at 616).

Missouri courts have long stood for the policy of requiring a contemporaneous objection to the qualifications of jurors; this policy "serves to minimize the incentive to sandbag in the hope of acquittal and, if unsuccessful, mount a post-conviction attack on the jury selection process." *State v. Ebeirus*, 184 S.W.3d 582, 585 (Mo. App. S.D. 2006)

(quoting *Hadley*, 815 S.W.2d at 423). "Where the trial court is under no duty to strike a venire member on its own motion, there is no evident, obvious, or clear error, and therefore no plain error." *State v. Hanna*, 693 S.W.3d 195, 199 (Mo. App. S.D. 2024) (quoting *State v. Skinner*, 494 S.W.3d 591, 594 (Mo. App. W.D. 2016)). This Court noted in *Ebeirus* that the defendant had "cite[d] no case where a trial court has been found to have committed reversible error, under plain error review, for failing to remove a member of the venire *sua sponte*." 184 S.W.3d at 585. Lechner fails to do the same in this case, presumably because no case exists to date where our appellate courts have determined a trial court committed plain error for failing to strike a venireperson *sua sponte*. We reasoned in *Ebeirus* that "[t]his absence [of reversals for plain error] is the natural result of the policy requiring a contemporaneous objection to the qualifications of jurors." *Id.*

While Lechner requests plain error review, he fails to do a plain error analysis in his briefing to facially establish substantial grounds for believing a manifest injustice or a miscarriage of justice has resulted. Specifically, Lechner fails to establish that Venireperson Nos. 16, 21, and 35 were not sufficiently rehabilitated by the trial court or that they were biased or unfair toward Lechner. Further, there is no evidence or allegation beyond the alleged unpreserved error itself that Lechner suffered an unfair or unjust trial. Lechner's claim that the trial court failed to strike Juror Nos. 16, 21, and 35 *sua sponte* is not an "evident, obvious, and clear error." The trial court did not have a duty to strike the jurors *sua sponte*, thus, there is no error. Lechner does not demonstrate how these jurors were unfair or partial causing a manifest injustice in his trial. Aside from the initial questions and responses to these jurors as outlined above, no further

35

questions were posed to them after the trial court read the propensity instruction to them and asked them, on two occasions, if anyone could not follow that instruction. The defense failed to pose any additional questions to these jurors regarding their ability to render a fair and impartial verdict, much less move to strike them again after the attempted rehabilitation. Because Lechner has failed to meet the threshold requirement of facially establishing substantial grounds for believing a manifest injustice has resulted, we decline to exercise our discretion to grant plain error review.

**Point VI**

Lechner claims in Point VI the trial court erred in accepting the jury's verdict on Count I finding Lechner guilty of child molestation in the first degree because the verdict directing instruction, Instruction No. 5, did not require the jury to find Lechner had "previously been found guilty of" a Chapter 566 offense which was required to make the charged crime "an aggravated sexual offense." Lechner argues that finding was an element of the crime and was required to be submitted to the jury and found beyond a reasonable doubt. Again, we disagree.

*Standard of Review*

Lechner concedes he did not object to Instruction No. 5 at trial and did not object to the trial court accepting the jury's verdict. Lechner also concedes he did not include this allegation of error in his Motion for New Trial. Thus, Lechner is raising this challenge for the first time on appeal. While Lechner asserts that his claim is "akin to a claim of insufficient evidence" because the jury never found the "aggravated sexual offense" element to the crime of child molestation in the first degree and urges us to review his claim on the merits as we would an unpreserved claim of insufficient evidence

and not for plain error, his arguments are based entirely on the language of Instruction No. 5. Sufficiency of the evidence is determined, however, by the way the defendant was charged, not by the way the jury was instructed. *State v. Zetina-Torres*, 482 S.W.3d 801, 809 (Mo. banc 2016). We will not entertain Lechner's backdoor attempt at creating a sufficiency of the evidence claim where his claim is clearly based on an alleged error in the trial court's jury instruction and he failed to preserve this claim for review.

"Generally, this Court does not review unpreserved allegations of error." *Brandolese*, 601 S.W.3d at 526; *see also* Rule 30.20. However, we may conduct plain error review on unpreserved claims; "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *State v. Donnell*, 695 S.W.3d 298, 300 (Mo. App. W.D. 2024) (quoting Rule 30.20). Plain errors must be evident, obvious, and clear, and the defendant must further demonstrate that "the trial court so misdirected or failed to instruct the jury as to cause manifest injustice or a miscarriage of justice." *State v. Jackson*, 681 S.W.3d 248 (Mo. App. S.D. 2023) (quoting *Brandolese*, 601 S.W.3d at 531). "To obtain a new trial on direct appeal based on a claim of plain error, the appellant must show 'the error was outcome determinative.'" *State v. Wood*, 580 S.W.3d 566, 579 (Mo. banc 2019) (quoting *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006)).

> A plain-error claim places a much greater burden on a defendant than an assertion of prejudicial error. A defendant must show not only that the trial court committed evident, obvious, and clear error, but also the existence of manifest injustice or a miscarriage of justice. To prove plain instructional error, the defendant must demonstrate the trial court so misdirected or failed to instruct the jury that the error affected the jury's verdict. Even clear and obvious instructional error rarely works a manifest injustice or miscarriage

37

of justice demanding plain-error reversal. The outcome of plain-error review depends heavily on the facts and circumstances of each case.

*Stuckley*, 573 S.W.3d at 768 (internal quotations and citations omitted).

*Analysis*

"A person commits the offense of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact and the offense is an aggravated sexual offense." Section 566.067.1. An "aggravated sexual offense" is "any sexual offense, in the course of which, the actor: . . . (d) Had previously been found guilty of an offense under [Chapter 566] . . . ." Section 566.010(1)(d). The Third Amended Felony Information charged Lechner with "the class A felony of child molestation in the first degree" and that "[Lechner] has previously been found guilty of an offense under RSMo Chapter 566, [], in that on or about January 18, 2022, [Lechner] pled guilty to the crime of Child Molestation in the Third Degree . . . ." At trial, the following stipulation, State's Exhibit No. 51, was read to the jury:

> On January 18th, 2022, [Lechner] pled guilty to the offense of Child Molestation in the Third Degree, in that between January 1, 2017 and November 1, 2018, in Stone County, Missouri, [Lechner] knowingly subjected [victim] who was less than fourteen years old to sexual contact by touching her breasts; and
> On January 18th, 2022, [Lechner] pled guilty to the offense of Child Molestation in the Third Degree, in that between January 1, 2017 and November 1, 2018, in Stone County, Missouri, [Lechner] knowingly subjected [victim] who was less than fourteen years old to sexual contact by touching the butt and vagina of [victim] with his penis and fingers.

Jury Instruction No. 5, the verdict director submitted by the State for Count I, child molestation in the first degree, read:

INSTRUCTION NO. 5

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

38

First, that on or between January 28, 2022, and March 25, 2022, in the State of Missouri, [Lechner] touched the breast of [Victim], a female person, through the clothing with his hand, and

Second, [Lechner] did so for the purpose of gratifying [Lechner's] sexual desire,

and

Third, that [Victim] was a child less than fourteen years of age,

then you will find [Lechner] guilty under Count I of child molestation in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [Lechner] not guilty of that offense.

The defense did not object to any of the jury instructions, including Instruction No. 5.

Lechner argues that Instruction No. 5 failed to contain a paragraph requiring the jury to find Lechner had previously been found guilty of a Chapter 566 offense even though the parties stipulated to this fact in Exhibit No. 51 and the stipulation was read to the jury. Lechner argues that the United States Supreme Court in *Apprendi v. New Jersey* and later in *Alleyne v. United States* requires that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 103 (2013) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 483 n.10 (2000)) (extending the holding of *Apprendi* to facts that increase the mandatory minimum sentence for a crime). Lechner argues that a violation of due process arises when the State obtains a conviction without the jury deliberating on and determining the contested elements of a crime. *See State v. Berry*, 506 S.W.3d 357, 362 (Mo. App. W.D. 2016).

The *Apprendi* Court, however, considered "whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense . . . be made by a jury on the basis of proof beyond a reasonable doubt." *Apprendi*, 530 U.S. at 469. The Court determined, "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490 (emphasis added). While not a constitutional requirement that a fact of a prior conviction be an element of a crime, in most cases, the existence of an aggravated sexual offense based on a prior finding of guilty of a Chapter 566 offense must be included in the jury instruction and submitted to the jury on a charge of child molestation in the first degree and ultimately found beyond a reasonable doubt by the jury. However, an exception exists and applies here. MAI-CR 4th 420.20, Notes on Use 4 and 7.

> Normally, the prosecution is entitled to prove its case free from any offer by the defense to stipulate to an element of the offense. However, the United States Supreme Court made an exception to this general rule for proof of a defendant's underlying conviction where the defendant was being prosecuted for being a convicted felon in possession of a weapon. *See Old Chief v. United States*, 519 U.S. 172 (1997). The principle of the case was that proof of the prior offense to the jury carried a risk of unfair prejudice to the defendant. **As a result, if the defendant is willing to stipulate to the fact of the alleged prior finding of guilt, the allegation of the prior offense will not need to be included in the verdict director as required by *Apprendi v. New Jersey*, 530 U.S. 466 (2000).** A stipulation by defendant to a prior finding of guilt may affect submission of lesser included offenses.

MAI-CR 4th 420.20, Note on Use 7 (emphasis added). Here, Lechner and the State stipulated to his prior convictions for child molestation in the third degree under section

40

566.069, and that stipulation of fact, Exhibit No. 51, was read to the jury, negating the requirement that the allegation of his prior offenses be included in the verdict director. Moreover, for purposes of plain error review, "[a] verdict directing instruction that omits an essential element rises to the level of plain error if the evidence establishing the omitted element was seriously disputed." *State v. Cooper*, 215 S.W.3d 123, 126 (Mo. banc 2007) (citing *State v. White*, 92 S.W.3d 183, 192 (Mo. App. W.D. 2002)). "[I]f the evidence establishing the omitted element was not in dispute, the jury's verdict would not have been affected and no plain error relief need be given." *State v. Harrell*, 342 S.W.3d 908, 922 (Mo. App. S.D. 2011) (quoting *Cooper*, 215 S.W.3d at 126). Clearly, because Lechner and the State stipulated to his prior convictions under Chapter 566, the omitted element establishing the "aggravated sexual offense" was not in dispute, and the jury's verdict was not affected. The omission of the "aggravated sexual offense" element in Instruction No. 5 does not rise to plain error in that there is no question as to whether the evidence (the stipulation) presented to the jury was sufficient to establish the "aggravated sexual offense" element. Lechner fails to demonstrate the trial court committed plain error resulting in manifest injustice or miscarriage of justice. As such, Point VI is denied.

**Point VII**

In Point VII, Lechner claims the trial court erred in overruling his Motion for Judgment of Acquittal because there was insufficient evidence to support his conviction of child molestation in the first degree in that the evidence did not show he had *previously* been found guilty of a Chapter 566 offense, which was required to establish it was an "aggravated sexual offense." He argues that his plea of guilty to child molestation in the third degree occurred on January 18, 2022, the same date that the Third Amended

41

Felony Information claims the charged crime could have occurred. We disagree and determine there was sufficient evidence for the jury to conclude the charged crime occurred after January 18, 2022.

*Standard of Review*

Where the sufficiency of the evidence is challenged, we review all evidence and inferences in the light most favorable to the verdict. ***State v. Blair***, 443 S.W.3d 677, 682 (Mo. App. W.D. 2014) (citing ***State v. Thompson***, 314 S.W.3d 407, 410 (Mo. App. W.D. 2010)). Our analysis is limited to "whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." ***State v. Diaz***, 611 S.W.3d 373, 374 (Mo. App. S.D. 2020) (quoting ***State v. Naylor***, 510 S.W.3d 885, 859 (Mo. banc 2017)). The appellate court does not act as a "super juror[,]" but grants "great deference to the trier of fact." ***Naylor***, 510 S.W.3d at 859 (quoting ***Jones***, 479 S.W.3d at 105).

*Analysis*

As set forth in the analysis sections for Points I, II, and VI herein, "[a] person commits the offense of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact and the offense is an aggravated sexual offense." Section. 566.067.1. An "aggravated sexual offense" is, in pertinent part, one in which the actor has previously been found guilty of an offense under Chapter 566. Section 566.010(1)(d). The Third Amended Felony Information charged Lechner as follows:

> [O]n or between January 18, 2022 and March 25, 2022, in the County of Stone, State of Missouri, [Lechner], for the purpose of arousing or gratifying the sexual desire of the defendant, subjected [Victim], who was then less than fourteen years old to sexual contact by touching her breast

through her clothing, and [Lechner] has previously been found guilty of an offense under RSMo Chapter 566, RSMo, in that on or about January 18, 2022, [Lechner] pled guilty to the crime of Child Molestation in the Third Degree in the Circuit Court of Stone County, Missouri, case number 19SN-CR00736-01.

Lechner argues that there was insufficient evidence to prove that he was "previously found guilty" of a Chapter 566 offense, but his arguments focus on evidence and inferences that are contrary to the jury's verdict and our standard of review. Lechner suggests the only evidence presented to the jury to establish he previously pled guilty to a section 566 offense was the stipulation admitted as Exhibit No. 51, which stated Lechner pled guilty to third-degree child molestation "[o]n January 18, 2022." From this, he argues the jury could have found he pled guilty on January 18, 2022, and committed the charged act also on January 18, 2022. Based upon that possibility, Lechner asserts that a reasonable inference from the stipulation was that he pled guilty to the prior offense on January 18, 2022, and there was insufficient evidence to suggest the instant crime was committed after this date. His arguments lack merit.

At trial, Victim testified that she informed her grandmother that Lechner touched her breast about two to three weeks after it happened. Her grandmother testified Victim told her about the touching on March 25, 2022, and that she contacted law enforcement that same day, and further stated that Victim told her the touching occurred a couple of weeks before she disclosed it. This testimony would lead a reasonable juror to believe the alleged conduct occurred in early March or late February, well after the January 18, 2022 guilty plea.

Lechner points to Victim's forensic interview, in which she stated that she was not good with dates and could not give any indication of the time of year the incident

43

occurred. However, a jury is entitled to believe "any, all, or none of a witness's testimony." *City of Aurora v. Spectra Commc'ns Group, LLC*, 592 S.W.3d 764, 785 (Mo. banc 2019) (quoting *Mitchell v. Kardesch*, 313 S.W.3d 667, 675 (Mo. banc 2010)). "The testimony of a single witness is sufficient to support a conviction[,] even if the testimony . . . is inconsistent." *State v. Dodd*, 637 S.W.3d 659, 668 (Mo. App. W.D. 2021) (quoting *State v. Bell*, 936 S.W.2d 204, 207 (Mo. App. W.D. 1996)). The jury is in the best position to resolve credibility issues. *State v. Weston*, 688 S.W.3d 1, 9 (Mo. App. W.D. 2024) (citing *State v. Porter*, 439 S.W.3d 208, 214 (Mo. banc 2014)). This Court will not engage in determinations that are properly left to the trier of fact. *State v. Yaggy*, No. SD38339, 2025 WL 52495, *4 (Mo. App. S.D. Jan. 9, 2025) (citing *Dodd*, 637 S.W.3d at 668).

The State's evidence, viewed in the light most favorable to the verdict, was sufficient to establish the touching occurred after Lechner pled guilty on January 18, 2022. A reasonable juror could find the testimony of both Victim and her grandmother to be persuasive in finding the incident to have occurred a couple of weeks before Victim disclosed the touching to her grandmother on March 25, 2022, placing the touching to have occurred in late February or early March, after Lechner pled guilty on January 18, 2022. Therefore, there is sufficient evidence for a jury to find Lechner had been "previously found guilty" at the time of the alleged touching. Point VII is denied.

## Conclusion

Finding no merit in any of Lechner's claims on appeal, we affirm the trial court's judgment.

44

JENNIFER R. GROWCOCK, C.J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

JACK A. L. GOODMAN, J. – CONCURS